IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>DAVID BRYAN FRANTZ,<br><br>Defendant. | No. 3:24-mj-00184-KFR |

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Katie Yarborough, having been first duly sworn, do hereby depose and state as follows:

**INTRODUCTION AND AGENT BACKGROUND**

1. I make this affidavit in support of an application for a criminal complaint and arrest warrant pursuant to Federal Rules of Criminal Procedure 3 and 4. As explained more fully below, I have probable cause to believe that DAVID BRYAN FRANTZ, (herein after referred to as "FRANTZ") has committed the following federal criminal offenses:

> **Count 1 – Interference with flight crew members and attendants**: On or about April 22, 2024, within the special aircraft jurisdiction of the United States, DAVID BRYAN FRANTZ did interfere with the flight crew members in violation of 49 U.S.C. § 46504.
>
> **Count 2 – Assault with Intent to Commit a Felony**: On or about April 22, 2024, within the special aircraft jurisdiction of the United States, DAVID BRYAN FRANTZ did assault VICTIM 1 with intent to commit a felony, to wit: abusive sexual contact in violation of 18 U.S.C. § 2244, all of which is in violation of 18 U.S.C. § 113(a)(2) and , 49 U.S.C. §46506(1),, .

2. The statements in this affidavit are based in part on information provided to me by other law enforcement officers, police reports, my own investigation of this matter, and my

training and experience. Since this affidavit is being submitted for the limited purpose of establishing probable cause to support a complaint and securing an arrest warrant, I have not included each and every fact known to me concerning this investigation.

3. I am a Special Agent (SA) with the Federal Bureau of Investigation (FBI). I have been a SA with the FBI for approximately five years. I am currently assigned to the White Collar squad in the FBI Anchorage Field Office. During my time with the FBI, I have led and participated in investigations involving violent crimes, threats, robbery, fraud, health care fraud, fraud against the government, and drugs. I also investigate violations of federal law occurring in the Special Aircraft Jurisdiction of the United States.

**FACTS ESTABLISHING PROBABLE CAUSE**

4. On April 23, 2024, at approximately 5:40 a.m., I received a phone call from a Minneapolis FBI Airport Liaison Agent, who reported an incident which was called in from Delta for flight DL474, registered aircraft number '5022', departing Anchorage, Alaska on April 22, 2024, at approximately 9:12 PM AKDT and arrival in Minneapolis International Airport (MSP) at approximately 05:39 AM MSP time on April 23, 2024. Delta flight crew members were reporting interference with a flight crew, by a passenger, FRANTZ, who had also reportedly sexual assaulted VICTIM 1.

5. Upon arrival of DL474 to MSP on April 23, 2024, Minneapolis Airport Police Officers met the flight crew at the gate to interview them as well as VICTIM 1. Flight attendants, W.B. and S.R., reported during the boarding process they noticed a male passenger, FRANTZ, who appeared "a little off" and possibly intoxicated. They identified the male as FRANTZ on the flight itinerary, showing he was seated in 5C.

042524

3:24-mj-00184-KFR 2

Case 3:24-mj-00184-KFR  Document 1-1  Filed 04/25/24  Page 2 of 7

6. Delta agents at the ticket counter at Ted Stevens Anchorage International Airport (ANC) reported when FRANTZ checked-in with Delta at the ticket counter, FRANTZ appeared to be intoxicated, was slurring his words, and his eye lids were drooping as he talked to them. Delta advised him to get something to eat and not to have any alcohol. FRANTZ admitted to Delta agents he had consumed a few drinks. Delta agents told him he would not be allowed to travel on his flight if he had any more alcohol.

7. Delta first class flight attendant, S.R., states during boarding she was taking orders, preparing, and delivering pre-departures to first class passengers. While taking the drink orders for FRANTZ and VICTIM 1, FRANTZ asked for an alcoholic beverage. When she returned with the drink orders, S.R. started to take note of FRANTZ's behavior. She thought he was starting to talk louder and "a little obnoxious", behaving in way that made her question if he had been drinking before getting on the plane. When she went back to the galley, she asked W.B., who was working the main cabin, if he would try to engage with FRANTZ as he walked past him to get W.B.'s opinion on FRANTZ's state. W.B. did as asked and confirmed S.R.'s comments about FRANTZ. Both flight attendants then went to FRANTZ and told him he would not be served any more alcoholic beverages on this flight. Soon after, S.R. was near FRANTZ but not interacting with him when he made the comment, "I'm in first class and you're going to cut me off?" S.R. responded saying, "Excuse me?" FRANTZ then repeated his same comment to her. S.R. did not respond and immediately went to notify her supervisor.

8. Per Delta policy, Delta advises and trains in-flight crews on handling of onboard incidents of customer misconduct, categorizing disruptive behavior into four levels from

3:24-mj-00184-KFR 3

Case 3:24-mj-00184-KFR Document 1-1 Filed 04/25/24 Page 3 of 7

lowest – disruptive to highest – life threatening. Crews are trained to employ assessments and deterrence and then their response. The principles rely on recognition of a potential or evolving threatening situation and take steps to attempt to diffuse or redirect the situation such as offering an alternative to a disruptive passenger. However, when this fails, crews' ultimate responsibility is to the safety of the aircraft and its passengers. Flight crews are encouraged to address a situation on the ground. A key indicator of the threat risk is a passenger's refusal to follow instructions on the ground. Once an aircraft is airborne, options become limited. Pilots are not allowed to open the flight deck door and are not available to assist with risks involving doors and emergency exits increasing exponentially.

9. In this incident, a Minneapolis Delta manager stated the flight crew followed these processes and properly recognized that the continued verbally aggressive behavior from FRANTZ was escalating and risked the potential of physical confrontation and removed FRANTZ prior to aircraft movement. The passenger removal is a clear indication that the behavior is getting beyond their control and threatens them, the passengers and the aircraft.

10. When S.R. notified her supervisor of FRANTZ, everyone had already boarded; and flight attendants had already closed the aircraft's door and were waiting for the aircraft to pushback. The captain of the plane asked for FRANTZ to be removed, as the crew feared for their safety and the safety of the passengers on board if FRANTZ had continued to stay on board the flight.

11. Flight attendants had to discontinue their regular duties to open the aircraft door to allow the Delta gate agent onboard to escort FRANTZ off. When the Delta gate agent went onboard and asked him to come off the plane, the gate agent reported FRANTZ seemed to

3:24-mj-00184-KFR 4

be a lot more intoxicated than when he had seen FRANTZ at the ticket counter initially.

12.     Before FRANTZ was removed, both flight attendants stated after the aircraft door was closed and they were preparing for pushback, they noticed something may have happened between FRANTZ and VICTIM 1. After FRANTZ was escorted off the plane and the plane had departed ANC, VICTIM 1 asked the flight attendant, S.R., what would happen if FRANTZ did something inappropriate to her. VICTIM 1 then told the flight attendant, S.R., that FRANTZ had groped her breast before he was removed from the aircraft.

13.     After landing in Minneapolis, a Delta official and Minneapolis Airport Police talked to VICTIM 1 about the incident. VICTIM 1 reported to Minneapolis Airport Police she was sitting in seat 5D next to FRANTZ. She had never met FRANTZ before but said she and FRANTZ were conversing normally with each other during the boarding process. FRANTZ told VICTIM 1 he was flying to Orlando to which she then asked him about his trip. FRANTZ told VICTIM 1 that he was going to Orlando "for sex." VICTIM 1 thought that was strange and said, "oh, ok." VICTIM 1 said FRANTZ then began talking about how he was "really good at oral sex and wanted to show [her]." VICTIM 1 then put on her headphones and tried to ignore FRANTZ. VICTIM 1 could tell that FRANTZ was still talking but couldn't hear much of what he was saying because of her headphones. VICTIM 1 then felt something on her left breast, looked down and saw FRANTZ's left hand groping her breast. VICTIM 1 immediately knocked his hand away. VICTIM 1 couldn't really hear anything because she was panicking. The flight crew came over and told FRANTZ he was cut-off from any alcohol. VICTIM 1 then noticed FRANTZ being escorted off the plane.

14. Delta agents confirmed FRANTZ was rebooked on Delta flight DL854 scheduled to leave ANC at approximately 3:30 PM AKDT on April 23, 2024. Anchorage Airport Police Department (AAPD) intercepted FRANTZ once he had cleared TSA checkpoint and was located sitting in a restaurant in the airport with what appeared to be an alcoholic beverage. FRANTZ was then taken to the AAPD office where he was met with FBI Agents and read his Miranda rights to which he agreed to talk with FBI and AAPD.

15. When asked about what happened in regard to the incident the night before on the flight, FRANTZ stated, "I got taken off the plane because I was drinking too much." When asked if anyone said anything to him before he got onto the plane, FRANTZ stated, "the ticket agent…she told me not to go back to the bar restaurant before I got on the plane, and I did." When asked if he could recall approximately how much he had to drink before he got on the plane, FRANTZ stated he could not recall how many.

16. When FBI asked if FRANTZ could recall what happened on the flight or talking to the passenger next to him, he stated he could not recall anything about the flight except for briefly talking with the female passenger next to him. FRANTZ could not recall what he said to her, however. When FBI told FRANTZ what VICTIM 1 had reported pertaining to the sexual comments made by FRANTZ to her, Frantz stated "I do not remember that, that's not me. I mean, if she said it, I probably said something." When FBI told FRANTZ what VICTIM 1 had reported pertaining to FRANTZ groping her breast, FRANTZ denied the accusation.

17. I arrested FRANTZ pursuant to my authority under 18 U.S.C. § 3052. FRANTZ was then transported to Anchorage Correctional Complex (ACC). During the booking

process at ACC, FRANTZ was administered a Breath Alcohol Content test (BrAC) at approximately 1:45 PM. The AAPD Officer and FBI Agents overheard the employee administering the test state that it reported FRANTZ had a BrAC of 0.006.

## CONCLUSION

18. I have probable cause to believe that FRANTZ has committed the offenses described in the complaint. Accordingly, I ask the court to issue a warrant for FRANTZ's arrest in accordance with federal rule of criminal procedure 4(a).

Respectfully Submitted,

_Katie Yarborough_
KATIE YARBOROUGH
Special Agent, FBI

Affidavit submitted by email and attested to me as true and accurate by telephone consistent with Fed.R.Crim. P. 4.1 and 41(d)(3) on this ___ day of _____, 20___.

_Kyle Reardon_
HON. KYLE F. REARDON
United States Magistrate Judge
District of Alaska
April 25, 2024